IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIGLER BOYZ ENVIRO, INC., | ) | Case No. 3:19-cv-170 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| CLEAN FUELS OF INDIANA, INC., d/b/a | ) | |
| CLEAN FUELS NATIONAL, and WAL- | ) | |
| MART, INC. a/k/a WAL-MART STORES, | ) | |
| INC., and WAL-MART STORES EAST, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.     Introduction

This case arises from Plaintiff Bigler Boyz Enviro, Inc.'s ("Bigler Boyz") cleanup of a diesel fuel spill on Defendants Walmart Stores, Inc. and Walmart Stores East, Inc.'s (collectively, "Walmart") property while Defendant Clean Fuels National ("Clean Fuels") was cleaning Walmart's fuel storage tanks. Pending before the Court is Walmart's Motion to Dismiss for Failure to State a Claim (ECF No. 20) and Motion to Dismiss for Failure to State a Claim; or, in the Alternative, Motion for More Definitive Statement. (ECF No. 22.) The Motions are fully briefed (ECF Nos. 20-2, 26–30) and ripe for disposition. For the reasons that follow, the Court **DENIES** Walmart's Motions.

### II.     Jurisdiction and Venue

This Court has subject-matter jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Venue is proper because a substantial part

of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

III.   **Factual Background**

The Court derives the following facts from Bigler Boyz's Amended Complaint (ECF No. 13) and Clean Fuels' Crossclaim (ECF No. 19) and accepts them as true for the purpose of deciding the Motions to Dismiss.

On March 14, 2019, while Clean Fuels was servicing diesel fuel tanks at a Walmart property pursuant to a service agreement between Clean Fuels and Walmart (the "Master Service Agreement"), a fuel tank released approximately 880 gallons of diesel fuel onto the property and surrounding areas. (ECF No. 13 ¶ 10.) Later that day, upon the express request, demand, and direction of Walmart, Clean Fuels contacted and engaged Bigler Boyz to respond to the fuel spill and to contain, clean up, and remediate contaminated soil at the Walmart property. (*Id.* ¶ 11; ECF No. 19 ¶ 78.)

Before hiring Bigler Boyz, Walmart told Clean Fuels that Walmart would be financially responsible, in whole or in part, for the cost of the remediation work. (ECF No. 19 ¶ 79; ECF No. 13 ¶ 14.) Walmart also told Clean Fuels that some or all of the costs associated with the remediation work would be covered by its insurance carrier or Pennsylvania's Underground Storage Tank Indemnification Fund ("USTIF"). (ECF No. 19 ¶ 81; ECF No. 13 ¶ 14.) Walmart told Clean Fuels that, as the owner of the affected property, it would make a claim with the USTIF and that any and all payments received by Walmart from the USTIF would be transmitted to Bigler Boyz. (ECF No. 19 ¶ 81.)

On March 15, 2019, Bigler Boyz and Clean Fuels—on behalf of, and at the express direction of, Walmart—entered into a written service agreement (the "Service Agreement"), whereby the parties agreed that Bigler Boyz would provide cleanup and remediation services at Walmart's property. (ECF No. 13 ¶¶ 15, 17.) Walmart reviewed and approved the Service Agreement prior to its execution. (*Id.* ¶ 18.) After Bigler Boyz began work on the spill site, Walmart assumed responsibility for the oversight and monitoring of Bigler Boyz's remediation work; as part of this oversight, Walmart retained an environmental consultant. (ECF No. 19 ¶ 80.)

Over the course of nearly three months, Bigler Boyz provided extensive containment, cleanup, and remediation services of the contaminated soil at Walmart's property, completing the services on June 5, 2019. (ECF No. 13 ¶¶ 21, 30.) On June 8, 2019, Bigler Boyz provided Clean Fuels and Walmart with a narrative report and detailed invoice of all cleanup and remediation services provided. (*Id.* ¶ 31.) Pursuant to the Service Agreement, Bigler Boyz was to be paid for its services on or before July 7, 2019. (*Id.* ¶ 33.) To date, neither Clean Fuels nor Walmart have paid Bigler Boyz for its services. (*Id.* ¶ 34.)

## IV. Procedural Background

On October 18, 2019, Walmart removed this case from the Court of Common Pleas of Clearfield County. (ECF No. 1.) Bigler Boyz filed an Amended Complaint on November 8, 2019, asserting a breach of contract claim against Clean Fuels and an unjust enrichment claim against Walmart.[1] (ECF No. 13.) On November 22, 2019, Walmart moved to dismiss the Amended Complaint and Clean Fuels filed a Crossclaim against Walmart, asserting a promissory estoppel

---

[1] Bigler Boyz also asserted a breach of contract claim against Walmart but has since stated that it would file a stipulation of dismissal of that claim. (ECF No. 26 at 7 n.2.) Accordingly, the Court does not address Bigler Boyz's breach of contract claim against Walmart.

claim. (ECF Nos. 19, 20.) Walmart then moved to dismiss the Crossclaim on December 9, 2019. (ECF No. 22.) Bigler Boyz and Clean Fuels responded in opposition to the Motions to Dismiss on December 13, 2019, and December 16, 2019, respectively. (ECF Nos. 26, 27.) Walmart replied to these oppositions on December 20, 2019. (ECF Nos. 28, 30.)

V.  **Legal Standards**

   **A. Motion to Dismiss**

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by the Supreme Court, a court reviewing the sufficiency of a complaint must take three steps.[2] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the]

---

[2] Although the Supreme Court described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Motion for More Definite Statement

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading," a party may move for a more definite statement. Fed. R. Civ. P. 12(e). However, Rule 12(e) motions are "highly disfavored since the overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden of unearthing factual details on the discovery process." *Lamb v. Richards Snow & Ice Removal*, No. 3:17-cv-28, 2017 WL 6352401, at *1 (W.D. Pa. Dec. 11, 2017); *see also Schaedler v. Reading Eagle Publ'ns, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967) ("Although the motion for a more definite statement continues to exist in rule 12(e), it is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading.").

In deciding Rule 12(e) motions, the prevailing standard employed by Third Circuit courts is to grant a Rule 12(e) motion "when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Lamb*, 2017 WL 6352401, at *1. Rule 12(e) should not be used to obtain information "which presents a

proper subject for discovery." *Id.* Rule 12(e) motions should be granted based on "unintelligibility, not lack of detail." *Wood & Locker, Inc. v. Doran & Assoc.*, 708 F. Supp. 684, 691 (W.D. Pa. 1989). Whether a Rule 12(e) motion should be granted is "a matter committed largely to the discretion of the district court." *Lamb,* 2017 WL 6352401, at *1.

## VI. Discussion

### A. The Court Denies Walmart's Motion to Dismiss Bigler Boyz's Amended Complaint

#### 1. The Parties' Arguments

Walmart asserts that Bigler Boyz's unjust enrichment claim fails because any benefit it received from Bigler Boyz was not unjust. (ECF No. 20-2 at 9.) Bigler Boyz did not allege that Walmart engaged in deceit nor that Walmart requested that Bigler Boyz perform the cleanup. (*Id.*) Bigler Boyz did not allege that Walmart engaged in any deceptive act. (*Id.* at 10.) The benefit Walmart received from Bigler Boyz was not unjust because Bigler Boyz conferred this benefit pursuant to an express agreement with Clean Fuels. (ECF No. 30 at 7.)

Bigler Boyz responds that it has pleaded a plausible unjust enrichment claim against Walmart. (ECF No. 26 at 7.) Bigler Boyz is not required to show that Walmart requested its services or misled it to perform the cleanup. (*Id.* at 9.) All Bigler Boyz needs to show is that Walmart retained a benefit from Bigler Boyz and that it would be unjust for Walmart to retain it without payment to Bigler Boyz. (*Id.* at 8.) It would be unjust for Walmart, as the property owner, to retain Bigler Boyz's services without payment because Walmart is the party ultimately responsible to contain, clean up, and remediate the fuel spill on its property. (*Id.* at 14.)

Even if Bigler Boyz was required to plead that Walmart requested its services or misled it, Bigler Boyz has pleaded facts that can meet these requirements. (*Id.* at 12.) Walmart requested, demanded, authorized, and encouraged the performance of Bigler Boyz's services at its property. (*Id.*) Walmart instructed Clean Fuels to hire Bigler Boyz to clean up the fuel spill, reviewed and approved the Service Agreement before Bigler Boyz and Clean Fuels executed it, and oversaw Bigler Boyz's performance pursuant to the Service Agreement. (*Id.* at 15.) Additionally, Walmart's actions and conduct were intended to, and did, induce Bigler Boyz to confer benefits upon Walmart. (*Id.* at 12–13.) Walmart instructed Clean Fuels to retain Bigler Boyz to respond to the fuel spill and induced and encouraged Bigler Boyz to provide its services by using express misrepresentations. (*Id.* at 18–19.) Walmart induced Bigler Boyz and Clean Fuels to enter into the service agreement under the pretense that Walmart or its insurers would provide some payment to Bigler Boyz upon completion of its services. (*Id.* at 19.)

### 2. Bigler Boyz Has Pleaded a Plausible Unjust Enrichment Claim

Pennsylvania law recognizes certain quasi-contracts, or contracts implied in law. *Schott v. Westinghouse Elec. Corp.*, 259 A.2d 443, 449 (Pa. 1969). Unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake performances, nor are they promises. *Id.* Instead, they are obligations created by law for reasons of justice. *Id.* One such quasi-contract falls within the doctrine of unjust enrichment, which requires that a party who has been unjustly enriched at the expense of another to provide restitution to the other. *Id.* (citing Restatement (First) of Restitution § 1 (Am. Law Inst. 1937)). Unjust enrichment is an equitable doctrine and courts sitting in equity hold "broad powers to grant relief that will result in an

equitable resolution of a dispute." *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa. Super. Ct. 2017) (en banc).

The elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1103 (Pa. 2018). The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the plaintiff's actions. *Id.* Whether an enrichment is unjust is a factual question to be determined on a case-by-case basis. *Id.*

The Pennsylvania Supreme Court's reasoning in *Myer Darragh* controls this case. In *Meyer Darragh*, a client hired the Meyer Darragh law firm to represent him in a wrongful death lawsuit under a contingent fee arrangement. 179 A.3d at 1095. Two years into the litigation, the client replaced Meyer Darragh with the law firm of Malone Middleman and, thereafter, Malone Middleman settled the litigation. *Id.* at 1095–96. Only Malone Middleman received attorney's fees from the settlement. *Id.* at 1096. Meyer Darragh brought an unjust enrichment claim against Malone Middleman, asserting that Malone Middleman owed Meyer Darragh restitution because the time it spent preparing for trial in the litigation directly benefitted Malone Middleman in obtaining its attorney's fees as part of the settlement. *Id.* at 1101. Malone Middleman argued that the enrichment was not unjust because Meyer Darragh did not demonstrate that Malone Middleman, as a third party to Meyer Darragh's contract with the client, misled or deceived Meyer Darragh. *Id.* at 1102.

The court rejected Malone Middleman's argument that Meyer Darragh needed to show deception and held that Meyer Darragh could recover damages from Malone Middleman under a theory of unjust enrichment. *Id.* at 1105. The court recognized that Malone Middleman, as a third party to the contract between Meyer Darragh and the client, benefitted from Meyer Darragh's earlier work in the case. *Id.* at 1103. The court stated that all that Meyer Darragh needed to recover under this theory was to show that Malone Middleman "received and retained a benefit" from Meyer Darragh, "which would be unjust to retain" without some payment to Meyer Darragh. *Id.* at 1105.

Walmart asserts that *D.A. Hill Co. v. Clevetrust Realty Investors*, 573 A.2d 1005 (Pa. 1990) and *Meehan v. Cheltenham Township.*, 189 A.2d 593 (Pa. 1963) requires that, for a plaintiff to state an unjust enrichment claim against a third party who benefits from a contract between the other parties, the plaintiff must show that the third party requested the benefit or misled the other parties.[3] In light of the Pennsylvania Supreme Court's decision in *Meyer Darragh*, this is not the case, as no such requirement was imposed on the plaintiff in that case. There was no showing in *Meyer Darragh* that Malone Middleman requested Meyer Darragh to work for the client, nor was

---

[3] Walmart also rests its argument on the Restatement of Restitution, which states: "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." Restatement (First) of Restitution § 110. However, the Restatement is not law in Pennsylvania and is not to be interpreted as if it were a statute. As the Pennsylvania Supreme Court has instructed, "because the language of a provision of the restatement, even to the extent it was adopted by the Court *verbatim*, has not been vetted through the crucible of the legislative process, a court applying the restatement formulation should betray awareness that the language of an 'adopted' restatement provision is not 'considered controlling in the manner of a statute.'" *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 354 (Pa. 2014). Thus, although the Pennsylvania Supreme Court adopted Restatement Section 110 in *Meehan*, 189 A.2d 593, the common law of Pennsylvania, as stated by Pennsylvania Supreme Court, is what this Court applies.

there a showing that Malone Middleman misled Meyer Darragh in any way. Malone Middleman, as a third party that benefitted from a contract between Meyer Darragh and the client, was unjustly enriched by Meyer Darragh's work on the case. Applying these principles, Bigler Boyz is not required to show that Walmart, as a third party to its contract with Clean Fuels, deceived it or requested the benefit. *See also Torchia ex rel. Torchia v. Torchia*, 499 A.2d 581, 583 (Pa. Super. 1985) ("[A] showing of knowledge or wrongful intent on the part of the benefited party is not necessary in order to show unjust enrichment.")

Although not requirements to make out an unjust enrichment claim, the considerations in *D.A. Hill* and *Meehan* are still relevant to the Court's analysis as factors to consider in determining whether an enrichment is unjust. Therefore, in determining whether an enrichment is unjust, the Court may consider whether the third party misled the other parties or requested the benefit from them.

The Court holds that Bigler Boyz has sufficiently pleaded facts which can show that the enrichment Walmart received is unjust. Bigler Boyz has pleaded that Walmart was not just a mere beneficiary of Bigler Boyz's services, but that: (1) Walmart is the party ultimately responsible for containing, cleaning up, and remediating the fuel spill on its property; (2) Walmart requested and authorized the performance of Bigler Boyz's services at its property; (3) Walmart instructed Clean Fuels to hire Bigler Boyz to clean up the fuel spill; (4) Walmart reviewed and approved the Service Agreement before Bigler Boyz and Clean Fuels executed it; (5) Walmart induced Bigler Boyz and Clean Fuels to enter into the service agreement under the pretense that Walmart or its insurers would provide some payment to Bigler Boyz upon completion of its services; (6) Walmart induced Bigler Boyz to provide its services with express

misrepresentations; and (7) Walmart oversaw Bigler Boyz's performance pursuant to the Service Agreement. These facts, if true, could show that Walmart's retention of Bigler Boyz's services, without payment, is unjust.

Accordingly, Bigler Boyz has pleaded a plausible claim for unjust enrichment.

### B. The Court Denies Walmart's Motion to Dismiss Clean Fuels' Crossclaim

#### 1. The Parties' Arguments

Walmart asserts that Clean Fuels fails to state a claim for promissory estoppel for four reasons. (ECF No. 28 at 3.) First, such claims cannot be based upon broad and vague implied promises, which is the substance of Clean Fuels' allegations here. (*Id.* at 3–4.) Second, promissory estoppel is inapplicable where the relationship between the parties is governed by a contract. (*Id.* at 4.) Walmart and Clean Fuels entered into an express, written Master Service Agreement, which has a full integration clause that precludes promissory estoppel. (*Id.*) Third, promissory estoppel is inapplicable if the promisee had a "duty of inquiry." (*Id.*) Under the terms of the Master Service Agreement, Clean Fuels had a duty to indemnify Walmart for harm resulting from its fuel system cleaning work. (*Id.*) If Walmart instructed Clean Fuels to clean up the fuel spill, Clean Fuels had a duty to inquire whether the request was pursuant to the Master Service Agreement or a separate promise. (*Id.* at 4–5.) Clean Fuels does not assert that it owed Walmart a duty, nor that it asked Walmart whether Walmart's request was pursuant to the Master Service Agreement. (*Id.* at 5.) Fourth, Clean Fuels has failed to allege facts sufficient to constitute unambiguous proof of reasonable reliance on a misrepresentation. (*Id.*)

Clean Fuels responds that it has stated a plausible promissory estoppel claim against Walmart. (ECF No. 27 at 11.) Walmart expressly requested that Clean Fuels retain Bigler Boyz

for cleanup services and told Clean Fuels that Walmart, its insurance carrier, or the USTIF would assume at least some of the costs associated with the cleanup. (*Id.* at 12.) This promise to finance the cleanup services induced Clean Fuels to enter into the Service Agreement with Bigler Boyz, and Clean Fuels would not have entered into the Service Agreement if not for Walmart's request and representations to Clean Fuels. (*Id.*) Neither the Service Agreement nor the Master Service Agreement preclude a promissory estoppel claim against Walmart because Walmart's promise to pay for the cleanup is a separate promise by Walmart to Clean Fuels, which was not covered in the Service Agreement. (*Id.* at 13.)

### 2. Clean Fuels Has Pleaded a Plausible Promissory Estoppel Claim

Under Pennsylvania law, promises generally must be supported by consideration to be legally enforceable. *Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc.*, 636 A.2d 156, 160 (Pa. 1994). The doctrine of promissory estoppel, however, provides an exception to this general rule. *Id.* Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citing Restatement (Second) of Contracts § 90 (Am. Law Inst. 1981)). Promissory estoppel permits an equitable remedy to a contract dispute. *Id.*

In order to maintain a claim for promissory estoppel, the aggrieved party must show that: (1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from

taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.[4] *Id.*

The Court holds that Clean Fuels has pleaded a plausible promissory estoppel crossclaim. Clean Fuels alleges that Walmart promised to pay for the remediation efforts if Clean Fuels went ahead and executed a contract with Bigler Boyz. This is a promise that Walmart should have reasonably expected Clean Fuels to rely upon. Clean Fuels asserts that it only entered into the Service Agreement with Bigler Boyz because of Walmart's representations. If these factual allegations are shown to be true, then an injustice would result if Clean Fuels could not enforce Walmart's promise.

Walmart's arguments to the contrary are unpersuasive. First, Clean Fuels is not asserting a vague, implied promise. Clean Fuels asserts that Walmart expressly made a promise to it, promising to pay for all or part of the cleanup costs. Next, any alleged contracts between Walmart and Clean Fuels do not bar Clean Fuels' promissory estoppel claim. The Master Service Agreement, executed in 2018, does not specify who would be responsible for hiring a third party to clean up fuel spills on Walmart's property. Moreover, the integration clause in the Master Service Agreement does not preclude a claim based on Walmart's alleged later promise to pay for the remediation efforts. Finally, Walmart's other two arguments against Clean Fuels' promissory estoppel claim are inapplicable because they relate to the promissory estoppel

---

[4] Pennsylvania courts previously employed the following elements for a promissory estoppel claim: (1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; (2) unambiguous proof of reasonable reliance on the misrepresentation by the party seeking to assert the estoppel; and (3) no duty of inquiry on the party seeking to assert estoppel. *Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 977 (Pa. Super. 1997). However, courts have since applied the *Crouse* framework and not this prior framework. *See, e.g., US Coal Corp. v. Dinning*, 222 A.3d 431, 440 (Pa. Super. 2019); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 718 n.2 (Pa. Super. 2005). Accordingly, the Court applies the Crouse framework.

framework that is no longer the governing law. As noted *supra* note 4, promissory estoppel claims in Pennsylvania no longer require "unambiguous proof of reasonable reliance on the misrepresentation" or that there was "no duty of inquiry on the party seeking to assert estoppel." Clean Fuels, therefore, was not required to plead such facts.

Accordingly, Cleans Fuels has pleaded a plausible claim for promissory estoppel.[5]

## VII. Conclusion

For the forgoing reasons, the Court denies Walmart's Motions.

An appropriate order follows.

---

[5] The Court also holds that Cleans Fuels need not replead with a more definite statement. This is not the "rare case" where a party has submitted an unintelligible pleading. *Schaedler*, 370 F.2d at 798. Walmart, as it did in its briefing, will be able to adequately respond to Clean Fuels' Crossclaim.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BIGLER BOYZ ENVIRO, INC., | ) | Case No. 3:19-cv-170 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| CLEAN FUELS OF INDIANA, INC., d/b/a CLEAN FUELS NATIONAL, and WAL-MART, INC. a/k/a WAL-MART STORES, INC., and WAL-MART STORES EAST, INC., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 21st day of April, 2020, upon consideration of Defendants Walmart Stores, Inc. and Walmart Stores East, Inc.'s Motion to Dismiss for Failure to State a Claim (ECF No. 20) and Motion to Dismiss for Failure to State a Claim; or, in the Alternative, Motion for More Definitive Statement (ECF No. 22), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said Motions are **DENIED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE